# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALLEN L. WISDOM,

    Plaintiff,

    v.                           Civil Action No. 15-1821 (JEB)

UNITED STATES TRUSTEE PROGRAM,

    Defendant.

## MEMORANDUM OPINION

For over two years *pro se* Plaintiff Allen Wisdom has been fighting the decisions made by a private trustee in his Chapter 7 bankruptcy case. Based on his belief that the trustee, Jeremy Gugino, perpetrated fraud and other misconduct in administering bankruptcy cases, Wisdom submitted Freedom of Information Act requests to Defendant United States Trustee Program. He challenges the Agency's response to these requests in this action. In a prior round of summary-judgment briefing, Wisdom contested the adequacy of the Agency's search and reliance on FOIA Exemptions 5, 6, and 7(E). The Court found that, on the whole, the Agency had failed to adequately detail its search process and substantiate its redactions. See Wisdom v. U.S. Trustee Program, 232 F. Supp. 3d 97, 116-19 (D.D.C. 2017). Following the Court's January 13, 2017, Opinion, Defendant renewed its search and released additional records. See ECF No. 38 (Declaration of Paul Bridenhagen), ¶¶ 53-54. The Agency now moves again for summary judgment, supported by an updated declaration and a revised Vaughn Index. Agreeing that this time around Defendant got it right, the Court will grant its Motion.

## I.     Background

As the prior Opinion sets forth the background in detail, the Court recounts only the facts relevant to the issues at hand.  In 2011, Wisdom filed a voluntary petition for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the District of Idaho.  The regional Trustee appointed Jeremy Gugino to Wisdom's case.  Wisdom and Gugino had an acrimonious working relationship, in large part due to Gugino's determination that Wisdom's life-insurance policies should be liquidated.  See Wisdom v. Gugino, No. 13-35409, 649 F. App'x 583, 584 (9th Cir. 2016) (unpublished).  The bankruptcy court agreed with Gugino despite Wisdom's strenuous objections.  Id.  Wisdom then embarked on a quest to expose alleged misconduct by Gugino in his case as well as in connection with other debtors.  In addition to filing an adversary proceeding against Gugino and others, see Wisdom v. Gugino, et al., Adv. Pro. 13-06045 (Bankr. D. Idaho 2013), Plaintiff also submitted a FOIA request to Defendant for 15 categories of records related to his bankruptcy proceeding and Gugino's service as trustee.  After some back and forth, the parties agreed to a two-stage release schedule.  First, the Agency would search for and release responsive records found in its Boise, Idaho, office (Request No. 2015-2053) and then would conduct a search for records in other locations (Request No. 2016-2033).  Although Defendant assigned the requests two separate tracking numbers, both are actually part of Wisdom's initial request.  See Wisdom, 232 F. Supp. 3d at 114.  After a year passed without receiving any documents, Wisdom submitted another request (Request No. 2016-2003) for records relating to the processing of his initial request.

In 2015, shortly after submitting request 2016-2003, Wisdom filed this action, challenging the Agency's tardy response to his requests.  The Agency thereafter released some documents, and Wisdom subsequently amended his Complaint to seek information that the

Agency had withheld.  See ECF No. 2 (Amended Complaint).  Both sides moved for summary

judgment, which the Court largely denied.  See Wisdom, 232 F. Supp. 3d 97.  In that decision,

the Court ruled on four matters, three of which Wisdom reprises today.

First, the Court rejected Defendant's claim that Wisdom had not administratively

exhausted his remedies with respect to all of his FOIA requests.  Second, it found that

Defendant's supporting affidavit from Joseph Carilli was procedurally sufficient.  Substantively,

however, the Court held that the affidavit was facially flawed as to all three requests because it

did not, "at a minimum, 'aver that [the Agency] has searched all files likely to contain relevant

documents.'"  Id. at 116 (quoting Am. Immigration Council v. Dep't of Homeland Sec., 21

F. Supp. 3d 60, 71 (D.D.C. 2014)).  The Court thus ordered Defendant to either supply a more

detailed affidavit or renew the search.  Additionally, based on the Agency's admission that it did

not search one location at all for request 2016-2033, the Court granted Wisdom summary

judgment on that issue and ordered Defendant to conduct a search.

The Court next reviewed numerous redactions the Agency had made to released

documents under Exemptions 5, 6, and 7(E).  Briefly, the Court denied Defendant's use of

Exemptions 5 and 7(E) because it had not provided enough detail from which the Court could

assess whether the exemptions were appropriate.  As to Exemption 6, the Court held that the

Agency could redact names and personal information of other debtors and complainants as well

as performance evaluations for trustees other than Gugino.  The Court also directed Defendant to

provide Gugino's performance evaluations for *in camera* review, after which it ordered

supplemental briefing from the parties assessing the potential private and public interests

implicated by release of those documents.  See ECF No. 34.  Believing it has now sufficiently

complied with the Court's directives, the Agency renews its Motion for Summary Judgment.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See DOJ v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and

discoverability of other documents.'"  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III.    Analysis

Accompanying its renewed Motion for Summary Judgment, Defendant has attached a declaration from Paul Bridenhagen and a revised Vaughn Index.  Plaintiff opposes both the form and substance of this new Motion.  Specifically, he raises four arguments: (1) the Agency is not permitted to file successive summary-judgment motions; (2) the new declaration is procedurally deficient; (3) Defendant's search remains inadequate; and (4) Exemptions 5 and 6 are inapplicable.  (The Agency no longer invokes Exemption 7(E).  See Bridenhagen Decl., ¶ 55.) The Court addresses each in turn.

### A.  Multiple Motions and Bridenhagen Declaration

The Court can swiftly dispose of Plaintiff's first two arguments.  Wisdom contends that the Agency's Motion for Summary Judgment is "not supported by [Federal Rule of Civil Procedure] 56, . . . local rules, case law or orders of this Court."  Pl. Supp. Br. at 4.  While successive motions may be inappropriate in certain contexts, the nature of FOIA cases lends itself to such filings.  When an agency improperly withholds requested documents from public disclosure, district courts serve to provide "[a]ggrieved citizens . . . a speedy remedy."  EPA v. Mink, 410 U.S. 73, 79 (1973).  That remedy is usually the outcome of an iterative motions process.  In other words, a court's decision that the agency fell short of the mark in a mendable way often includes a directive that it go back and attempt to correct any errors – e.g., by conducting another search or by releasing more documents.  See Am. Immigration, 21 F. Supp. 3d at 67 (partially granting Defendant's successive motion for summary judgment); Stein v. DOJ, 197 F. Supp. 3d 115, 117 (D.D.C. 2016) (same).  In this case, that directive was explicit.

The Order that accompanied the prior Opinion directed the parties to "meet, confer, and propose a further briefing schedule." ECF No. 28 (January 13 Order). That briefing schedule, which the Court approved, proposed dates for Defendant to "file its supplemental motion for summary judgment" as well as for Plaintiff to file an opposition. See ECF No. 32 (Proposed Briefing Schedule) at 1-2. The Court, therefore, rejects Plaintiff's procedural challenge to Defendant's Motion.

Wisdom's second grievance – that the Bridenhagen Declaration is inadequate – is also unavailing. Paul Bridenhagen has been a trial attorney in the Executive Office for the United States Trustees since March 1993 and has been responsible for the Agency's FOIA compliance since December 23, 2016. See Bridenhagen Decl., ¶ 1. Plaintiff argues that since Bridenhagen was not in charge of FOIA compliance until late 2016, he could not have been involved in searching for documents responsive to these FOIA requests, which the Agency released between October 2015 and March 2016. See Pl. Supp. Br. at 6. The Bridenhangen Declaration is, according to Plaintiff, thus hearsay not subject to any exception. Additionally, Plaintiff argues that it is "overly larded up with unsupported conclusory statements which are essentially boilerplate language with no meaning that meets the criterial set forth in the Court's" prior Opinion. Id. at 7-8. Wisdom challenged the Agency's previous declaration on these same bases, and the Court, again, rejects those arguments. See Wisdom, 232 F. Supp. 3d at 115-16.

"Plaintiff misconstrues what Rule 56 mandates in the FOIA context." Id. at 115. FOIA affidavits can be based on hearsay, and there is no requirement that the declarant must have been personally involved in each of the challenged searches. Id.; see Barnard v. Dep't of Homeland Security, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) ("Declarants are not required to participate in the search for records."). It is sufficient for a FOIA declarant to "'attest to his personal

knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question.'" Madison Mech., Inc. v. Nat'l Aeronautics & Space Admin., No. 99–2854, 2003 WL 1477014, at *6 (D.D.C. Mar. 20, 2003) (quoting Spannaus v. Dep't of Justice, 813 F.2d 1285, 1289 (4th Cir. 1987)). Bridenhagen's declaration meets these criteria. His sworn statements were "based upon [his] personal knowledge, upon information provided to [him] in [his] official capacity, upon [his] familiarity with the documents in question, and upon conclusions and determinations reached and made in accordance therewith." Bridenhagen Decl., ¶ 2; see also id., ¶¶ 3-4. The Court now considers whether the search procedures described therein are adequate.

B. Search Adequacy

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994). The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984). "When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." SafeCard, 926 F.2d at 1201. To meet its burden, the agency may thus submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). To satisfy the dictates of FOIA, a defendant must, at a minimum, "aver that it has searched all files likely to contain

relevant documents." Am. Immigration, 21 F. Supp. 3d at 71 (quoting Am. Immigration Council v. Dep't of Homeland Sec., 950 F. Supp. 2d 221, 230 (D.D.C. 2013) (emphasis added)). If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542. As discussed below, the Court finds that this search was adequate.

As a reminder, three FOIA requests are at issue here. The prior Opinion ordered Defendant to "either supply a sufficient declaration or conduct a new search" for requests 2015-2053 (the first stage of the initial request) and 2016-2003 (the request for information related to the processing of the initial request) because it was "unclear whether the searches themselves were inadequate or just inadequately explained by the government." Wisdom, 232 F. Supp. 3d at 118-19. Defendant, conversely, had to conduct an entirely new search for request 2016-2033 (the second stage of the initial request). Heeding the Court's directives, Bridenhagen recounts in considerable detail the search locations, methods, and terms the Agency used to locate responsive records. See Bridenhagen Decl., ¶¶ 7-54. EOUST identified three systems and four locations, which were "the only USTP systems and locations where electronic and hard copy records responsive to Plaintiff's FOIA requests might reasonably be found." Id., ¶ 15; see id., ¶¶ 11-14. The declaration then details who was in charge of each search, the USTP employees "with knowledge of the records requested," id., ¶ 20, and the search terms used. Id., ¶¶ 16-24 (No. 2015-2053), ¶¶ 25-39 (No. 2016-2003), ¶¶ 40-54 (No. 2016-2033). For all three FOIA requests, Bridenhagen averred that "Defendant identified and searched all hard copy and electronic systems . . . that might contain documents relevant and responsive to" Plaintiff's FOIA requests. Id., ¶ 24 (No. 2015-2053); see also ¶ 39 (No. 2016-2003), ¶ 52 (No. 2016-2033).

Plaintiff does not appear to challenge the Agency's thoroughness but instead balks at its failure to produce specific documents. For example, Wisdom requested "District of Idaho Bankruptcy Court conformed copies Liberty Mutual Insurance Company Chapter 7 Blanket bond # 016027975 and Renewal Certificates" for several dates. See Compl., ¶¶ 7(14). Defendant accordingly searched the relevant systems using the search term "blanket bond." Bridenhagen Decl., ¶ 20. Plaintiff nonetheless argues that the Agency has not carried its burden because "there remains no 'confirmed' bond or any mention of renewal certificates," and Defendant has not made any statements "that there are no documents responsive" to the request. See Pl. Supp. Br. at 8. Although Plaintiff styles his argument as one relating to the inadequacy of the search, what he really protests is Defendant's failure to locate certain documents. Agencies, however, are judged not on the specific documents that they produce but on whether the search was "reasonably calculated to uncover all relevant documents." Weisberg v. DOJ, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." Perry, 684 F.2d at 128. While the Agency could have included additional search terms, such as the name of the insurance company, the bond number, or the dates, the Court finds that its search for "blanket bond" was "reasonably calculated to uncover all relevant documents." Weisberg, 705 F.2d at 1351. The search did, in fact, turn up the blanket bond's rider and a non-conformed copy of the bond, which were passed on to Wisdom. See ECF No. 18-2 at 11-15; ECF No. 18-1 (Declaration of Allen Wisdom), ¶ 65.

Neither is the search inadequate because, as Plaintiff contends, the Agency did not provide an itemized list detailing to which of Plaintiff's 15 categories each document corresponds or note for which categories there are no responsive records. See Pl. Supp. Br. at 8-

9.  First of all, this may be a complaint about the sufficiency of the Vaughn Index, but it is not truly a question about the search.  Second, although thoroughness is certainly preferable, FOIA requests are not interrogatories; as long as the Agency provided all responsive documents to all request categories and listed all those withheld, it has complied with the statute.  The Court, therefore, finds that the search was adequate and grants Defendant summary judgment on this issue.

C.  Exemptions

Plaintiff next challenges the Agency's use of FOIA Exemptions 5 and 6 to withhold certain information from released documents.  The Court considers them separately.

1.  *Exemption 5*

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  In other words, under Exemption 5, an agency may withhold from a FOIA requester any "documents[] normally privileged in the civil discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984).  This exemption thus encompasses three distinct categories of information: deliberative-process privilege, attorney-work-product privilege, and attorney-client privilege.  See Am. Immigration Council v. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216 (D.D.C. 2012).  Defendant invokes the first two.

a.  Deliberative-Process Privilege

The deliberative-process privilege shields internal agency "advisory opinions, recommendations and deliberations" in order to "protect[ ] the decision making processes of government agencies."  Sears, 421 U.S. at 150 (citations omitted).  To qualify under this

privilege, a record must meet two requirements. First, it must be predecisional – *i.e.*, "antecedent to the adoption of an agency policy." Jordan v. DOJ, 591 F.2d 753, 774 (D.C. Cir. 1978) (*en banc*) (emphasis omitted), overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1053 (D.C. Cir. 1981) (*en banc*). Second, a record must be deliberative – *i.e.*, "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975). "A document that does nothing more than explain an existing policy cannot be considered deliberative." Public Citizen, Inc. v. OMB, 598 F.3d 865, 876 (D.C. Cir. 2010). Exemption 5 thus "focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Sears, 421 U.S. at 150. (citation and internal quotations marks omitted).

Before delving into whether the Agency can invoke Exemption 5, the Court notes that Plaintiff never actually argues that it does not apply. Wisdom, instead, mischaracterizes the Court's prior Opinion as wholly "den[ying] the [redactions] based on the deliberative process exemption." Pl. Supp. Br. at 17-18. This is inaccurate. The Agency's initial Vaughn Index and declaration included such scant information that the Court was unable to assess whether the exemption was applicable. For example, the Agency redacted some information to "protect[] the deliberative process of the agency regarding the status of the relationship between panel trustees and bankruptcy judges," ECF No. 14-25 (Exh. X to Carilli Declaration) at 1, without detailing "to whom or from whom the documents were sent." Wisdom, 232 F. Supp. 3d at 121. The Agency's reasons for invoking the exemption, further, did not "explain how these documents were 'predecisional' or, in fact, whether they were deliberative in the sense of being designed to work toward the crafting of an agency policy or action." Id. at 120. The Court, therefore, held

that the Agency had "not demonstrated <u>at this stage</u> that it can withhold <u>any</u> of the documents for

which it cited Exemption 5's deliberative-process privilege." <u>Id.</u> at 121 (first emphasis added).

Defendant has addressed these deficiencies in the current round of briefing, supplementing the

initial <u>Vaughn</u> Index with dates and detailed descriptions of the withheld information.  As a

result, it did not "double[] down on its claims to the Exemption 5 deliberative process exemption

. . . in spite of the Court's determination."  Pl. Supp. Br. at 18.  The Agency instead did exactly

what the Court instructed – it "offer[ed] further detail to support its cited exemptions." <u>Wisdom</u>,

232 F. Supp. 3d at 130.

Moving now to the actual substance of the Agency's position, the Court finds that its

redacted material is "both predecisional and deliberative." <u>Mapother v. DOJ</u>, 3 F.3d 1533, 1537

(D.C. Cir. 1993).  Defendant withheld four types of information under Exemption 5: (1) emails

and memoranda exchanged between individuals responsible for evaluating, overseeing, and

managing Gugino; (2) documents regarding complaints made about Gugino in his role as trustee;

(3) documents regarding Agency meetings with bankruptcy judges; and (4) miscellaneous

documents. <u>See</u> Mot. at 23; Bridenhagen Decl., ¶ 59. The Agency contends that all of these

documents pertain to "the performance review process and are retained as part of the trustee's

oversight file for evaluation purposes."  Mot. at 26; Bridenhagen Decl., ¶¶ 61-64.

"The United States Trustee must prepare a written performance review at least every two

years."  USTP Policy and Practices Manual, ¶ 2-1.4.5.  That performance review is a summary of

all of the information collected in a trustee's oversight file and includes "correspondence to the

trustee, memos to the file, audits, and other reviews" from the trustee's performance team and

others who supervise the trustee.  <u>Id.</u>  Gugino's file included emails and memoranda exchanged

between USTP employees "with oversight responsibility for the trustee and bankruptcy cases to

which Gugino was appointed." Mot. at 24. The documents, which contain "discussions, deliberations, opinions and recommendations regarding the biennial USTP Trustee Performance Review to be given to Gugino, a decision whether to close a 2011 Field Examination, and a decision whether to pursue an enforcement action to suspend or terminate Gugino," Mot. at 24, are both predecisional and deliberative. Discussions regarding a trustee's performance and whether to terminate or suspend his service by definition occur before the Agency makes an employment decision and "compris[e] part of a process by which governmental decisions and policies are formulated." Sears, 421 U.S. at 150 (citation and internal quotations marks omitted).

Perhaps realizing this fact, Plaintiff makes no real attempt to show that the redacted materials do not meet Exemption 5's requirements. The remaining arrow in his quiver is, instead, the contention that the privilege is "overcome by a government misconduct exception." Pl. Supp. Br. at 16. This argument, however, misses the target completely. Courts in this circuit that have recognized the government-misconduct exception have done so in a narrowly defined set of circumstances where the "claimed governmental misconduct [is] severe enough to qualify as nefarious or extreme government wrongdoing." Neighborhood Assistance Corp. of Am. v. HUD, 19 F. Supp. 3d 1, 14 (D.D.C. 2013). The party seeking to overcome the privilege bears the burden of providing "'an adequate basis for believing that [the documents] would shed light upon government misconduct.'" Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 903 F. Supp. 2d 59, 67 (D.D.C. 2012) (quoting Judicial Watch of Fla., Inc. v. DOJ, 102 F. Supp. 2d 6, 15 (D.D.C. 2000)); cf. Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004) (stating that FOIA requester "must establish more than a bare suspicion" of government misconduct to overcome Exemption 7(C) withholding).

Plaintiff here claims Defendant is withholding documents as part of a "massive systemic bankruptcy fraud" cover-up within Idaho. See Pl. Supp. Br. at 9. Although he asserts the existence of this fraud by listing a litany of statutes and policies that Defendant has allegedly violated, Plaintiff only attempts to develop two of these theories, which are discussed below. The Court deems the others forfeited. See Cement Kiln Recycling Coal. v. EPA, 255 F.3d 855, 869 (D.C. Cir. 2001) ("A litigant does not properly raise an issue by addressing it in a cursory fashion with only bare-bones arguments.") (citation and internal quotations marks omitted).

First, one of the requirements for a trustee is to "file[] with the court a bond in favor of the United States conditioned on the faithful performance of" the trustee's duties. See 11 U.S.C. § 322(a). For reasons the Agency fails to explain, Gugino's bond was never filed with the court. Plaintiff argues this failure means that Gugino was not authorized to be the trustee in Plaintiff's bankruptcy case, and the Agency is withholding documents in an effort to hide this mistake. As another district court adjudicating a separate claim by Wisdom ably explained, however, that argument does not hold water because the "*de facto* trustee doctrine provides that even where there may be a technical defect in a trustee's qualifications, the trustee's legitimate activities are still valid when 'such person has, since being appointed as trustee, . . . held [him/herself] out to be trustee, and . . . [has] been treated as trustee by the Court, creditors and employees of the estate and all other interested parties.'" In re Wisdom, No. 16-251, 2017 WL 1097182, at *5 (D. Idaho Mar. 21, 2017) (quoting In re Granderson, 252 B.R. 1, 5 (B.A.P. 1st Cir. 2000)); In re Holiday Isles, Ltd., 29 B.R. 827, 829 (S.D. Fla. 1983) ("The legal concept of a de facto trustee is an application of a long-settled general proposition of law that a person can de facto represent an entity and that form will not be elevated over substance."). Both the bankruptcy court and the district court in Idaho found that Gugino "held himself out as the

trustee and was treated as such by the Court, creditors, and all interested parties – including Mr. Wisdom." In re Wisdom, 2017 WL 1097182, at *5. Taking the facts in the light most favorable to Wisdom, this Court agrees with the Agency that, given the Idaho district court's resolution of the bond issue, "it is illogical" for Wisdom to claim that the Agency "would improperly claim FOIA exemptions to hide information concerning trustee Gugino's surety bond." Def. Reply at 4.

Second, Plaintiff makes much of "the fact that Gugino was appointed to the panel of standing trustees at a time when he was employed by the District of Idaho bankruptcy court as a law clerk in violation of 28 C.F.R. § 58.4(c)(3)." Pl. Supp. Br. at 12. As Defendant correctly points out, however, Gugino is not a standing trustee. Standing trustees administer Chapter 12 and 13 bankruptcy cases, see 28 U.S.C. § 586(b) (defining standing trustee), and 28 C.F.R. § 58.4(c)(3) applies only to standing trustees. Gugino, as a Chapter 7 trustee, is a private trustee, and there is no regulation that prohibits a private trustee from also being a law clerk. See 28 C.F.R. § 58.3(b) (listing qualifications for private-trustee membership). The Court, therefore, finds that Wisdom has not presented any evidence of government misconduct to overcome the deliberative-process privilege.

### b. Work-Product Privilege

"The attorney work-product [prong of Exemption 5] protects 'documents and tangible things that are prepared in anticipation of litigation or for trial' by an attorney." Am. Immigration Council, 905 F. Supp. 2d at 221 (quoting Fed. R. Civ. P. 26(b)(3)). As this Court has noted in the past, the work-product privilege is relatively broad, encompassing documents prepared for litigation that is "foreseeable" even if not necessarily imminent. Id. Although Plaintiff does not mount any defense challenging Defendant's reliance on the privilege, the Court

must nevertheless "satisf[y] itself that the record and any undisputed facts justify granting summary judgment." Winston & Strawn, LLP v. McLean, 843 F.3d 503, 507 (D.C. Cir. 2016).

For the vast majority of documents for which the Agency claims Exemption 5, it cites both the deliberative-process and attorney-work-product privileges. Because the Court has already explained the sufficiency of the former, it only evaluates those documents for which the Agency solely claims the latter. See Elec. Privacy Info. Ctr. v. DHS, 384 F. Supp. 2d 100, 109 (D.D.C. 2005) ("[I]f defendants have withheld information on the basis of multiple exemptions, the court need only rely on one exemption for each piece of exempted material.") (citation omitted).

Defendant invokes the work-product privilege for two emails between the AUST and the Acting UST. See ECF No. 38-2 (Supplemental Vaughn Index) at 29, 32. Both pertained to ongoing litigation in Plaintiff's bankruptcy case and his adversary proceeding against Gugino. Id. Because the "need to protect attorney work product is at its greatest when the litigation with regard to which the work product was prepared is still in progress," FTC v. Grolier Inc., 462 U.S. 19, 30 (1983), the Court has little difficulty finding that the discussions between the AUST and the Acting AUST about Plaintiff's ongoing related litigation are exempt from disclosure.

### 2. *Exemption 6*

Plaintiff also challenges Defendant's redaction of Gugino's performance evaluations, which have been withheld pursuant only to Exemption 6. See Pl. Supp. Br. at 18-23. The Court reviewed the evaluations *in camera* and, after providing a brief description of the material in its February 28 Opinion, asked the parties to brief the public and private interests at stake.

Under Exemption 6 an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(6). In assessing this exemption, a court "pursue[s] two lines of inquiry." Multi Ag Media LLC v. Dep't of Agric., 515 F.3d 1224, 1228 (D.C. Cir. 2008). First, it must determine whether the records at issue are those encompassed by Exemption 6. If so, the court must then determine whether their disclosure would "constitute a clearly unwarranted invasion of personal privacy," which requires balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information." Id. The weight given to the personal privacy side of the scale correlates to how much disclosure would affect "the individual's control of information concerning his or her person." DOJ v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 763 (1989). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." Dep't of Def. v. Fed. Labor Rel. Auth., 510 U.S. 487, 497 (1994) (citation and internal quotations omitted). When balancing the private and public interests, the burden lies with the requester to "establish a sufficient reason for the disclosure," Favish, 541 U.S. at 172, but there is a "presumption in favor of disclosure." Wash. Post Co. v. Dep't of Health and Human Servs., 690 F.2d 252, 261 (D.C. Cir. 1982).

The prior Opinion held that the evaluations were of the type protected by Exemption 6 and that Gugino had a substantial privacy interest in records that contain potentially embarrassing or, at the very least, intensely personal information regarding his performance as trustee. See Wisdom, 232 F. Supp. 3d at 125-27. The Court is thus left now, as then, with the task of weighing that privacy interest against the public interest in disclosure. In pushing the latter here, Plaintiff points to the immense power that trustees like Gugino may wield over debtors. They are charged with maximizing the estate's recovery and, as such, have the authority

to liquidate non-exempt assets. Although Gugino has resigned from the trustee panel and is no longer assigned new cases, he is still administering his current cases. See Pl. Supp. Br. at 21. There is, consequently, a real public interest in ensuring that trustees are appropriately supervised and, when necessary, removed. The Court, therefore, disagrees with Defendant's characterization of the public interest here as "insubstantial." Mot. at 35.

After reviewing the documents *in camera*, however, the Court concludes that the scale tips in favor of nondisclosure. Private trustees like Gugino occupy a position somewhere between public officials and private citizens. See Obsidian Finance Grp., LLC v. Cox, 740 F.3d 1284, 1292-93 (9th Cir. 2014) (holding that "[a]lthough bankruptcy trustees are an integral party of the judicial process" they are not "public officials simply by virtue" of their appointment) (internal citation and quotation marks omitted); In re Bursztyn, 366 B.R. 353, 364 (Bankr. D.N.J. 2007) ("[A] bankruptcy trustee . . . represents a hybrid between private actor and government official."); EOUST, Handbook for Chapter 7 Trustees, ¶ 2.8 (noting that private trustees are "private individuals" not government employees). As a private individual, Gugino certainly has a strong privacy interest in the details of his evaluations. See Reporters Comm., 489 U.S. at 774 ("FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed."). Even if Gugino were a government employee (which he is not) he would still have some privacy interest in his performance evaluations. Dunkelberger v. DOJ, 906 F.2d 779, 781 (D.C. Cir. 1990) ("Government employee[s] ha[ve] at least a minimal privacy interest in [their] own employment record and evaluation history."). The Court finds that, here, even a moderate privacy interest prevails over the public interest.

Gugino's performance reviews detail the Agency's diligence in evaluating his service as trustee, pointing out both areas in which he excels and those that need improvement. The Court can discern no evidence of misconduct on the part of the Agency in supervising Gugino and certainly nothing that would indicate a massive fraud of the sort Plaintiff alleges is occurring. Other documents described in the <u>Vaughn</u> Index show that the Agency discussed removing Gugino as a trustee in light of his deficits. <u>See</u> ECF No. 38-2 (Composite Exh. 5) at 23 (describing redacted document as discussion of "whether to close an audit relating to" Gugino's field examination). The descriptions in the <u>Vaughn</u> Index and Bridenhagen Declaration combined with the nonredacted disclosed documents provide enough information to "shed[] light on [the] [A]gency's performance of its statutory duties." <u>Reporters Comm.</u>, 489 U.S. at 773. Any further information disclosing the particulars of Gugino's evaluations would not illuminate the subject enough to overcome Gugino's privacy interest. The Court finds, therefore, that Gugino's privacy interest in his performance evaluations clearly outweighs any public interest in the EOUST evaluation process.

### 3. *Segregability*

Although the Court holds that Exemptions 5 and 6 apply, one issue remains. FOIA requires that any "reasonably segregable portion of a record shall be provided to any person requesting such record after the deletion of the portions which are exempt." 5 U.S.C. § 552(b). While the Government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," <u>Hodge v. FBI</u>, 703 F.3d 575, 582 (D.C. Cir. 2013) (quoting <u>Sussman v. U.S. Marshals Service</u>, 494 F.3d 1106, 1117 (D.C. Cir. 2007)), this presumption of compliance does not obviate its obligation to carry its evidentiary burden and fully explain its decisions on segregability. <u>See</u> <u>Mead Data Cent., Inc. v. Dep't of Air Force</u>, 566

F.2d 242, 261-62 (D.C. Cir. 1977). To do so, the agency must provide "a 'detailed justification' and not just 'conclusory statements' to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining government affidavits explained non-segregability of documents with "reasonable specificity"). "Reasonable specificity" can be established through a "combination of the Vaughn index and [agency] affidavits." Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002). District courts have "an affirmative duty to consider . . . segregability issue[s] *sua sponte*" even if they were not raised by the parties. Trans-Pacific Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

The revised Vaughn Index and the Bridenhagen Declaration provide a "detailed justification," Valfells, 717 F. Supp. 2d at 120, for the redactions. See Bridenhangen Decl., ¶¶ 56-76. The former identifies "the pages where redactions were made, the FOIA exemptions asserted, the date and type of document released, the author(s) and the recipient(s), and . . . the information withheld as exempt." Id., ¶ 80. The Agency withheld the content of Gugino's evaluations and his personal information but produced copies of the trustee background questionnaire, application, and performance-review-criteria sheets. See ECF No. 14-4 (Exh. C) at 5-30. Defendant has explained that it did not produce these documents with Gugino's personal information because "the public interest is only in the information that would shed light on the United States Trustee's execution of its mission to oversee private trustees under 28 U.S.C. § 586 and is limited to that information necessary to determine that the USTP evaluates a trustee." Bridenhagen Decl., ¶ 69. The Court agrees.

## IV.    Conclusion

For the reasons stated above, the Court will issue a contemporaneous Order granting summary judgment to Defendant.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 1, 2017